70 F.3d 96
 1995 Copr.L.Dec. P 27,452, 37 U.S.P.Q.2d 1157
 IMPERIAL RESIDENTIAL DESIGN, INC., a Florida Corporation;
Regal Classic Homes, Inc., Plaintiffs-Appellees,
v.
The PALMS DEVELOPMENT GROUP, INC., a Florida corporation;
Earl Peck, Jr., Defendants-Appellants,
Tony Camelo, d/b/a Tony Camelo and Associates, Defendant.
IMPERIAL RESIDENTIAL DESIGN, INC., a Florida Corporation;
Regal Classic Homes, Inc., Plaintiffs-Appellees,
v.
The PALMS DEVELOPMENT GROUP, INC., a Florida corporation;
Earl Peck, Jr., Defendants,
Tony Camelo, d/b/a Tony Camelo and Associates, Defendant-Appellant.
 Nos. 93-2309, 93-2400 and 93-2672.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 5, 1995.
 
 William B. Pringle, III, Orlando, FL, for Palms Development Group, Inc. and Earl Peck, Jr.
 Michael K. Gray, Vero Beach, FL, for Tony Camelo.
 Ava K. Doppelt, Allen, Dyer, Doppelt, Franjola & Milbrath, Orlando, FL, for appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON*, Senior District Judge.
 PER CURIAM:
 
 
 1
 This action is a copyright infringement action brought by Regal Classic Homes as the alleged transferee of the ownership of copyright in a home design. Regal appeals the district court's order on remand that Regal lacked standing to sue defendants for copyright infringement. We reverse and remand.
 
 FACTS
 
 2
 In 1988, Michael McGuffie, president of Regal Classic Homes ("Regal"), a housing development company, met with residential designer Donald Wilson, the president of Imperial Residential Design ("Imperial"), and asked him to design floor plans for a model single-family home. The design was to be based on McGuffie's ideas derived from his experience with home buyers. Wilson drafted and completed plans for the "Regency" model in August 1988. Both Wilson and McGuffie testified that Wilson then orally transferred to Regal all his company's rights in the Regency design and that both believed that the Regency plan was the sole property of Regal. In March 1989, Regal opened the first Regency model and offered to the public printed brochures displaying the Regency format. Before that time, only contractors, subcontractors, or governmental entities had seen the inside of the Regency model or the brochures. The brochures contained no copyright notice.
 
 
 3
 In March or April 1990, McGuffie saw in his advance copy of the "Parade of Homes" magazine a floor design for the "Chateau," a model that was strikingly similar to the Regency design. The Chateau had been designed by Tony Camelo of Tony Camelo and Associates ("Camelo") for Palms Development Group ("P.D.G.") and Earl Peck, president of P.D.G. P.D.G. built and marketed several homes based on the Chateau design. As a result, McGuffie sought legal counsel; and, in April 1990, McGuffie and Wilson signed a written agreement that transferred to Regal all copyright rights in the Regency design (April Agreement). On April 17, 1990, Regal and Wilson registered the Regency copyright under the name of Regal Classic Homes, Inc.
 
 PROCEDURAL HISTORY
 
 4
 In October 1990, Regal filed a complaint for copyright infringement against defendants P.D.G., Earl Peck, Jr., David Meixner, and Tony Camelo ("first action"). In the first action, Regal alleged that defendants made unauthorized copies of the Regency design and used it for their own profit by promoting it as their Chateau house plan. Defendants challenged Regal's basis for standing, arguing that, although the April Agreement transferred from Imperial to Regal "all rights," the agreement transferred no right to Regal to sue for copyright infringements that occurred before the April transfer. In response, on May 15, 1991, McGuffie and Wilson executed a second written agreement (May Agreement) which they claim memorialized Wilson's alleged October 1988 oral transfer agreement with McGuffie. The May Agreement specifically transferred to Regal all causes of action for prior infringements.
 
 
 5
 Following a bench trial in September 1991, the district court found that defendants, through the use of the Chateau design, had infringed the copyrighted Regency plan. The district court concluded, however, that Regal did not own the copyright in the Regency plan at the time the infringements occurred. The district court explained that, although Wilson transferred to Regal in the April Agreement the copyright in the Regency, the Agreement did not transfer rights to sue for prior infringements: the April Agreement did not establish that Regal obtained ownership of the copyright by the 1988 oral agreement or that the parties intended the April Agreement to memorialize the 1988 oral agreement. The district court also concluded that the parties intended to transfer the copyright in the Regency by written, rather than by oral, agreement, as evidenced by the Copyright Registration Certificate application.
 
 
 6
 Regal claimed that the May Agreement memorialized the 1988 oral transfer. The district court determined, however, that the April Agreement was the only agreement properly before the court. The district court explained that the introductory phrase in the April Agreement, "[t]he following when signed by you and by us, shall constitute our agreement," constituted a merger clause indicating that the parties intended the April Agreement to be the final embodiment of their agreement to transfer all rights in the Regency design. The district court held that the May Agreement, therefore, was parol evidence and refused to consider it. In addition, the district court noted that the May Agreement was not executed until after the complaint had been signed and filed. The court held, therefore, that Regal lacked standing to sue and dismissed the suit.
 
 
 7
 Regal filed notice of appeal, and in December 1991, the district court issued an Amended Order clarifying its position for purposes of appeal. The court vacated its prior ruling that the May Agreement constituted parol evidence but held that the May Agreement was properly excluded because it had been executed after the suit was filed. On appeal Regal argued (1) that the district court erred in excluding the May Agreement; (2) that the district court erred in finding that the April Agreement included no right to sue for infringements occurring before execution of that agreement; and (3) that the district court erred in finding that the April Agreement did not memorialize the earlier oral agreement. We affirmed the district court's decision without opinion. Regal Homes v. Palms Development, 979 F.2d 213 (11th Cir.1992).
 
 
 8
 In May 1992, Regal, along with Imperial, again filed suit against defendants for copyright infringement of the Regency design and added a claim for violation of section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a) (second action).[1] In the second action, Regal based standing to sue on the May Agreement. After several motions were filed by both parties, the district court excluded from evidence the May Agreement. Based on this ruling, defendants moved to dismiss Regal for lack of standing. The district court, however, denied the motion and allowed Regal to proceed. Because it had found in the first action that defendants had infringed the Regency copyright, the court submitted to the jury only the issue of damages. The jury awarded Regal $75,000 in damages and awarded Imperial $6000. Defendants filed six post judgment motions which were denied. Defendants then appealed the district court's decision.
 
 
 9
 On appeal, we acknowledged that Regal might have standing to sue as an exclusive licensee or beneficial owner but, finding this inconsistent with the district court's decision in the first action, remanded the case to allow the district court to clarify its findings of fact and conclusions of law on the issue of standing. Imperial Residential Design v. Palms Development Co., 29 F.3d 581 (11th Cir.1994). On remand, the district court determined that it had erred in not granting defendants' motion to dismiss Regal for lack of standing after the district court had excluded the May Agreement and that the issue of damages should have been submitted to the jury only for Imperial Palms. In the light of the district court's decision, we ordered supplemental briefing on the issue of standing. We consider only the issue of whether Regal had standing to sue for copyright infringement.[2]
 
 ANALYSIS
 
 10
 Pursuant to the Copyright Act, the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. Sec. 501(b). To prevail in this copyright infringement action, then, Regal must establish that it owned the copyright in the Regency design and that defendants copied the design. See Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers, 756 F.2d 801, 810 (11th Cir.1985). That defendants copied the Regency design is no longer disputed; therefore, only the element of ownership remains. Because Imperial Palms was the original owner of the copyright in the Regency design, M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1492 (11th Cir.1990), the issue before this court is whether Imperial Palms validly transferred to Regal before defendants' infringement ownership of the Regency copyright.
 
 
 11
 The Copyright Act provides that "a transfer of copyright ownership ... is not valid unless an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed." 17 U.S.C. Sec. 204(a). We recognize that "17 U.S.C. Sec. 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer." See Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc., 29 F.3d 1529, 1532-33 (11th Cir.1994). Regal claims that Imperial Palms orally transferred copyright ownership in the Regency design in 1988, when the drawings were completed, and that the written May Agreement memorialized the earlier oral transfer. The district court, however, excluded the May Agreement as "a self-serving attempt to transfer ownership of the cause of action after infringement had occurred."
 
 
 12
 This court has adopted the reasoning of those courts which have held that a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio. Id. at 1533. See also Great Southern Homes v. Johnson & Thompson, 797 F.Supp. 609, 611-612 (M.D.Tenn.1992) (Wiseman, J.) (later writing signed by copyright owner and transferee memorializing oral agreement cured defects in standing, although signed after suit was filed). In addition, the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership. Therefore, we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement. See Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27, 36 (2nd Cir.1982). And, at least in a case such as this one--where both the original owner and the transferee have joined as plaintiffs in the same lawsuit--we will not let the alleged infringer invoke section 204(a). See Great Southern Homes, 797 F.Supp. at 611.
 
 
 13
 We conclude, therefore, that the district court improperly excluded the May Agreement, which already had been completed and signed when the present lawsuit was filed; and, we hold that the written May Agreement cured any defects in Regal's standing to maintain this copyright infringement action. The decision of the district court on remand--that Regal lacked standing to sue for copyright infringement--is reversed. Because the issue of damages Regal suffered as a result of P.D.G.'s infringement was properly submitted to the jury in the second action, we remand the case for the district court to enforce that judgment.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Howell W. Melton, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 Defendants obtained a directed verdict on plaintiffs' Lanham Act claim and moved for attorney's fees as the prevailing party on that claim. Upon recommendation of a Magistrate Judge, the district court denied defendants' motion. Given our decision in the present appeal, we conclude, without further discussion, that the district court did not abuse its discretion in denying defendants' motion for attorneys' fees
 
 
 [2]
 In our prior decision remanding this case to the district court, we held that the district court did not abuse its discretion in refusing to submit to the jury special verdict forms or in refusing to allow the jury to consider copyright infringement concepts, such as notice on a copyrighted work or uniqueness. See Imperial Residential Design v. Palms Development Group, 29 F.3d 581, 583, n. 5 (1994). Therefore, we will not consider again these issues