**INTIMO, INC., Plaintiff,**

v.

**BRIEFLY STATED, INC., Defendant.**

**No. 95 Civ. 3971 (DLC).**

United States District Court,
S.D. New York.

Dec. 16, 1996.

---

**316**

David A. Einhorn, Cristina A. Carvalho, Anderson Kill & Olick, P.C., New York, NY, for Plaintiff.

Robert L. Epstein, James & Franklin L.L.P., New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

COTE, District Judge:

Defendant submitted a trial brief to this Court contending, *inter alia,* that plaintiff lacks standing to bring this suit for copyright infringement. At issue are two written assignments of copyrights and the effectiveness of later amendments to those assignments. Defendant contends that the original assignments did not transfer a right to sue for any existing or prior infringement, and that a later amendment to the assignment cannot cure the standing defect after filing its action. For the reasons given below, the amendments are effective and, therefore, plaintiff does have standing to sue for infringements occurring prior to the January 1995 assignment.

*Background*

This case involves copyrights to two design patterns for boxer shorts—"Grandma's Christmas Boxer" and "Candy Canes." The authors of the designs assigned the copyrights in the designs to plaintiff in agreements dated January 11 and 12, 1995. The relevant language of the assignments states that the assignor gives to plaintiff "all rights, title and interest, legal and equitable, in and to the copyrighted works." The assignments do not mention any transfer of claims or causes of action for infringements prior to the assignment. Plaintiff registered its copyright to the two designs and received a certificate of registration on March 13, 1995.

Plaintiff filed suit against the defendant in this Court on June 1, 1995, alleging copyright infringement for sales that took place both before and after—but primarily before—the January 1995 assignment. Discovery ensued on all issues and the parties were instructed to submit all pretrial order documents to this Court on October 4, 1996 for a nonjury trial. As this Court conducts nonjury trials with direct evidence submitted by affidavit, the parties' documents included such evidence. Plaintiff included in its papers an amendment to the January 1995 assignment executed on October 4, 1996 which states that in the January 1995 assignments the assignors "intended to and did also transfer any and all claims or causes of action for infringement thereof existing prior to the date of execution." Defendant contends that the January 1995 assignments did not transfer claims or causes of action, and the October 4, 1996 amendment was too late to cure this defect in standing.

Plaintiff and defendant both sell boxer shorts to retail stores in the United States. Plaintiff sells to upscale department and specialty stores such as Saks Fifth Avenue. Defendant sells to retailers at the lower end of the market, such as Wal–Mart and Filene's Basement.

Plaintiff took the patterns designed by the original authors and gave them to a manufacturing company in China to produce the boxer shorts. Plaintiff then sold these boxer shorts during the 1993 and 1994 Christmas season to high-end retailers. The boxer shorts were retailed for $20–25.

In mid–1994, defendant travelled to Asia where he purchased boxer shorts with several different Christmas designs—including boxer shorts with the two designs at issue in this case—from the same Chinese factory that manufactures plaintiff's boxer shorts. In August 1994, defendant imported these boxer shorts on lesser quality fabric than is used by the plaintiff for its product and sold them to its customers, retail stores such as Wal–Mart. The boxer shorts retailed for $6–9 a pair prior to Christmas and for considerably less in January.

When plaintiff's customers discovered that boxer shorts with the same patterns but of lower-quality fabric were being sold in low-end department stores, its customers refused to purchase any more boxer shorts with the two designs.

Although neither party breaks down how many pairs were sold before and after Janu-

ary 1995,[1] in a conference held by this Court on October 18, 1996, both parties agreed that the vast majority of sales took place prior to January 1995. Therefore, whether or not the October 4, 1996 amendments are effective is central to the disposition of this lawsuit.

*Law*

■ To bring a claim for copyright infringement, a plaintiff must show that it is the owner of a valid copyright in the work allegedly infringed. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2nd Cir.1995). The owner of the copyright can be the author or her assignee. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 195 (2nd Cir.1985).

■ The general rule is that for infringements that occur prior to the assignment, it is the assignor and not the assignee who has standing to sue for that infringement. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2nd Cir.1991). An assignment may confer the right to a claim for prior infringement, but only if that right is explicitly transferred. In *ABKCO*, a case involving the assignment of rights to sue for a copyrighted song, the Second Circuit held that

> [t]he legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership. 17 U.S.C. § 501(b). Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.

*Id.* at 980. *See also Skor–Mor Prod., Inc. v. Sears, Roebuck & Co.*, 1982 Copyright Law Decisions (CCH) ¶ 25,397 at p. 17,298, 1982 WL 1264, *3 (S.D.N.Y. May 12, 1982) ("assignment of copyright does not convey existing causes of action for infringement unless expressly included" or was part of a comprehensive and unrestricted sale of all assets); Melville B. Nimmer & David Nimmer, 3

*Nimmer on Copyright* § 12.02[B] at 12–57 (1996) (even if assignment says it conveys "all right, title and interest" it is "generally construed *not* to assign existing causes of action") (emphasis in original).

Despite this rule, there is some precedent to support plaintiff's claim that a party may amend an assignment to clarify that it was intended to convey accrued causes of action. That is, that a party can cure a standing defect with a second assignment which explicitly transfers causes of action for infringements prior to the initial assignment. Two cases in this district gave effect to writings that cured standing or clarified previous agreements with later writings. The Court in *Godinger Silver Art Co. v. International Silver Co.*, 37 U.S.P.Q.2d 1453, 1995 WL 702357 (S.D.N.Y.1995), held that the plaintiff could cure its standing defect after the action was filed. The Court gave effect to an assignment made after the commencement of the action—albeit an assignment that initially included an express transfer of accrued causes of action—stating that this was sufficient basis for the assignee to bring the claim, even though the assignee did not have that right when the action was filed. *Id.* at 1457. Another case allowed a party to limit an assignment of accrued causes of action by a later writing. *R & R Recreation Prod., Inc. v. Joan Cook Incorp.*, 1992 WL 88171, *4 (S.D.N.Y. April 14, 1992). Although that case does not state when the assignment and modification took place in relation to the action, the court did give effect to a later writing, relying on basic contract principles. *Id.*

A case in another district that is more directly on point also allowed a later writing to cure a standing defect. In *Infodek, Inc. v. Meredith–Webb Printing Co.*, 830 F.Supp. 614, 620 (N.D.Ga.1993), the original assignment held by the plaintiff-assignee was silent as to whether it conveyed a right to sue for prior infringements. Citing the general rule that such a transfer must be explicit, the Court held that the assignment did not con-

---

**1.** Defendant maintains that no more than 400 pairs were sold after the assignment, and that these are the only pairs for which it should be potentially liable. Defendant does not state the

number of pairs sold prior to January 1995. Plaintiff maintains that a total of 14,869 pairs of infringing boxer shorts were sold to the public, but it does not state when these pairs were sold.

vey the accrued causes of action. It did, however, give effect to a later agreement which transferred the accrued causes of action. This later assignment was made after the claim was filed but before trial. *Id.* at 617 n. 2, 620–21. Citing several older circuit court cases, the trial court determined that the second assignment could cure the defect

> provided the assignment occurs before trial, the plaintiff is the real party in interest in at least one other claim, and the defendant suffers no prejudice from its recognition.

*Id.* at 620 (citing *Dubuque Stone Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir.1966); *Kilbourn v. Western Surety Co.,* 187 F.2d 567, 571 (10th Cir.1951)).

■ In the instant case, defendant contends that the trial began on October 4, 1996, when the direct evidence was submitted to this Court. Plaintiff argues that the trial did not begin on that date, and that the amendments were submitted simultaneously with direct evidence. Drawing on the factors articulated in *Infodek,* I find that while this was a very late amendment, it is still effective.

First, I find that the assignment did occur before trial. The August 5, 1996 Pretrial Scheduling Order required the Pretrial Order, as well as the direct testimony presented through affidavits, to be served by October 4, 1996. The parties were informed that the case was placed on the Court's trial ready calendar and would be called for trial as soon after October 8, 1996 as that calendar permitted. In an October 18, 1996 conference with counsel, the parties requested and the Court agreed to resolve this standing issue prior to trial. Most importantly, the defendant is not prejudiced by recognizing the amendments. The defendant has conducted discovery on the substantive issues involved. Giving effect to the amendments will not change the issues to be litigated at trial and the defendant has been unable to identify any unfair prejudice to it from allowing the trial to proceed on the infringement occurring before January 1995.

Second, I find that another interest to be protected is whether the real party in interest is bringing the lawsuit. A defendant should not be subjected to multiple claims for the same infringement. Such a policy has been articulated in several cases which do not address the assignment issue but do involve later writings which confirm prior oral transfers of copyright ownership. These cases relied on the fact that writing requirements are designed to prevent against fraudulent claims by plaintiffs and are not intended to be invoked by defendants. *Magnuson v. Video Yesteryear* 85 F.3d 1424, 1428 (9th Cir.1996) (writing subsequent to initiation of litigation validates prior oral grant); *Imperial Residential Design v. Palms Development,* 70 F.3d 96, 99 (11th Cir.1995) ("copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer *ab initio*"); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36 (2nd Cir.1982) (holding same true for exclusive licensees); *Great Southern Homes v. Johnson & Thompson,* 797 F.Supp. 609, 612 (M.D.Tenn.1992) (holding same even where later writing made after filing of action). The reasoning of the Eleventh Circuit is representative of the other courts. That Court stated

> where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [statutory requirement of written assignment—17 U.S.C. § 204(a) ] to avoid suit for copyright infringement.

*Imperial Residential Design,* 70 F.3d at 99. This reasoning is applicable to the instant case because in the instant case there is no dispute about who may bring the claim against the defendant. Indeed, as evidenced by the October 4, 1996 amendments, the prior owners to the copyrights in question intended to transfer the accrued causes of action to plaintiff. Therefore, I find that the plaintiff is the real party in interest in this lawsuit as the authors of the designs have assigned their interest to plaintiff and clearly do not intend to prosecute the prior infringement.

Finally, if I did not give effect to the amendments, plaintiff would merely litigate the post-assignment infringement in this law-

suit and then immediately file another lawsuit for the pairs that were sold prior to the assignment, this time with the amendment already in hand. I find that conducting two trials on the same issues would not serve judicial economy and would waste the parties' time and money.

Therefore, since defendant has been on notice of the entire scope of the claimed infringement since the suit was filed and has conducted discovery on the substantive issues, since plaintiff is the real party in interest, and in the interests of judicial economy and saving the parties the expense of relitigating the same issues, I find that the amendments are timely.

### Conclusion

For these reasons, plaintiff does have standing to bring this suit for any infringement prior to January 1995. The trial is scheduled for January 2, 1996.

SO ORDERED.