## COMPAQ COMPUTER CORPORATION, Plaintiff,

### v.

## ERGONOME INCORPORATED, Stephanie L. Brown, and Thomas Mowrey, Defendants.

### No. CIV.A.H–97–1026.

United States District Court, S.D. Texas, Houston Division.

June 28, 2001.

---

Michael O. Sutton, Locke Liddell et al., Houston, TX, for Compaq Computer Corp.

Arnold Anderson Vickery, Arnold Anderson et al., Houston, TX, Paul F. Waldner, III, Waldner & Assoc., Houston, TX, Martin R. Gold, Rubinbaum et al., New York City, Charles K. Kebodeaux, Beaumont, TX, Stephen M. Kramarsky, Thomas E.L. Dewey, Dewey Pegno et al., New York City, for Ergonome, Inc., Stephanie L. Brown, Thomas W. Mowrey.

Richard P. Keeton, Mayor Day Caldwell & Keeton, Houston, TX, for Gold Farrell & Marks.

Kent Arlan Rowald, Bracewell & Patterson, Houston, TX, for Vaden Eickenroht & Thompson, LLP, Felsman Bradley Vaden Gunter Dillon, LLP.

Kent Arlan Rowald, Houston, TX, pro se.

## MEMORANDUM OPINION AND ORDER

HARMON, District Judge.

Pending before the Court in the above-referenced action is Plaintiff Compaq Computer Corporation's ("Compaq") Memorandum in Opposition to Ergonome's Supplemental Motion for Partial Summary Judgment (Inst. No. 274). To the extent the Court reads Plaintiff's opposition to Defendant's partial summary judgment motion as itself a motion for partial summary judgment, the Court concludes that such motion should be **DENIED.**

## I. PROCEDURAL BACKGROUND

In this Memorandum Order and Opinion, the Court is asked to go down yet another dark corridor in the long and labyrinthine procedural history of this litigation. On January 29, 2001, Defendants Ergonome Incorporated, Stephanie L. Brown, and Thomas Mowrey (referred to

collectively as "Ergonome") filed their Supplemental Motion for Partial Summary Judgment, addressing various issues of copyrightability, infringement, merger, *scenes a faire*, and fair use. On March 27, 2001, the Court issued its Memorandum Opinion and Order that rendered judgment on these very issues, holding that Ergonome's work is indeed copyrightable as a matter of law, and that genuine issues of material fact precluded summary judgment (for either party) on the remaining issues. As a result, Ergonome's previously-filed supplemental motion for partial summary judgment, as well as any of Compaq's responses to that motion, were moot.

As a rebuttal to Ergonome's supplemental motion, however, Compaq had raised the argument that Ergonome did not actually own the photographs at issue in *The HAND Book.* Surprisingly, both parties have since indicated their desire for the Court to resolve this issue, even though the very motion the argument was raised to defeat (*i.e.,* Ergonome's supplemental summary judgment motion) no longer remains. The peculiarity of the situation is further enhanced by the fact that, although Compaq raised this issue of photograph ownership for the first time as a reply to a motion for summary judgment, both parties treat the issue as one for summary judgment by Compaq.[1] The Court, however, rejects the notion that Compaq's Opposition to summary judgment is now properly before the Court for ruling, for the Opposition evaporated along with Ergonome's supplemental motion for partial summary judgment. Assuming *arguendo* that Compaq's Opposition is properly before the Court, however, the Court addresses it below.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant. *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, however, the movant for summary judgment need not support the motion with evidence negating the opponent's case. Instead, the movant may satisfy its burden by showing that there is an absence of evidence to support the non movant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

1. The Court further notes that, in Compaq's Proposed Order (attached to its Memorandum in Opposition to Ergonome's Supplemental Motion for Partial Summary Judgment), Compaq would have the Court render summary judgment for it on the grounds of uncopyrightability, *de minimis* use, and fair use. Compaq does *not,* however, treat the issue of copyright ownership as a ground for summary judgment. Thus, the parties' present desire for the Court to rule on that issue is made all the more curious.

*Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Hopper v. Frank,* 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir.1994)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant. *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir.1996) (per curiam); *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

## III. DISCUSSION

In its Opposition, Compaq asserts that it, not Ergonome, actually owns the rights to the photographs at issue by virtue of a quitclaim from the photographer, Terry Gruber ("Gruber"). Compaq states that Ergonome does not own the copyrights in the photographs because neither Stephanie L. Brown ("Brown") nor Thomas Mowrey ("Mowrey") obtained a work-for-hire agreement from Gruber until June 15, 1993, *after* the second photographic shoot. The photographs at issue in this case were taken by Gruber on October 28, 1992. As a result, there was no work-for-hire agreement in place at the time of Gruber's photographing.

To Compaq, the lack of a work-for-hire agreement at the time of photographing is significant. The Copyright Act provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection. *Id.* at § 102. *See Community for Creative*

*Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The Act carves out an important exception, however, for "works made for hire." If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. *See* 17 U.S.C. § 201(b); *Reid,* 490 U.S. at 737, 109 S.Ct. 2166. Classifying a work as "made for hire" therefore determines, *inter alia,* the initial ownership of the copyright. *See Reid,* 490 U.S. at 737, 109 S.Ct. 2166; 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 5.03[A], pp. 5–10 (1988).

With regard to the validity of a work-for-hire agreement, the Copyright Act defines a "work made for hire" as "[a] work specially ordered or commissioned for use . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101(2). From this definition, Compaq argues that, a work-for-hire agreement, to be valid, must have been executed at the time of the creation of the copyrighted expression. If not, the actual creator of the work remains the true "author" who owns the copyright. In the instant case, Compaq argues that if a valid work-for-hire agreement was not executed between Ergonome and Gruber before the photographs were taken, then Gruber never relinquished ownership over the photographs to Ergonome. As a result, his subsequent quitclaim to Compaq conveyed full ownership in the photographs to Compaq.

Compaq concedes that two conflicting lines of case law interpret the work-for-hire requirement differently. The Seventh Circuit, in promoting a bright-line rule, has held that the parties must sign the work-for-hire agreement *before* the copyrighted work is created in order for the

work-for-hire agreement to be valid. *See Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 413 (7th Cir.1992) ("The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally.") In contrast, the Second Circuit has held that the written work-for-hire agreement may be executed after the copyrighted work is created. That court rejected the Seventh Circuit's view in *Schiller* and explained:

We are not convinced, however, that the actual writing memorializing the agreement must be executed before the creation of the work. The Nimmers make a convincing argument in their treatise on copyrights that such a requirement could itself create uncertainty. They argue:

[O]ne can [ ] imagine claims involving parties each of whom knew of the unanimous intent among all concerned that the work for hire doctrine would apply, notwithstanding that some of the paperwork remained not fully executed until after creation of the subject work. In that [ ] circumstance, the bright line rule could frustrate the intent of the parties, and cloud rather than serve the goal of certainty.

1 NIMMER § 5.03[B][2][b] (1994). They conclude that "perhaps this rule needs further testing in the crucible of fact patterns by future cases." *Id.* We agree. In the fact pattern of this case, we will assume that the writing requirement of § 101(2) can be met by a writing executed after the work is created, if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work.

*Playboy Enter., Inc. v. Dumas,* 53 F.3d 549, 559 (2nd Cir.1995). Notwithstanding the circuit split on the issue, Compaq urges the Court to adopt the rule of the Seventh Circuit (mandating a pre-creation agreement) because such a rule conforms with the language of the Copyright Act, is supported by Congressional testimony, and furthers the Copyright Act's goal of promoting predictability and certainty in copyright ownership.

▓ The Fifth Circuit has not weighed in on the issue of a work-for-hire agreement's timing. Nonetheless, the Court notes that the Fifth Circuit has deemed the Second Circuit to be "the *de facto* Copyright Court of the United States," *Easter Seal Soc. for Crippled Children and Adults of Louisiana, Inc. v. Playboy Enter.,* 815 F.2d 323, 325 (5th Cir.1987), and, as such, the Second Circuit exerts particular persuasion in matters of copyright. Moreover, because the Court finds that the Second Circuit's rule appropriately allows for a flexible, case-by-case inquiry into the existence of a work-for-hire agreement, the Court adopts it, and holds that the three overriding questions in the matter are: (1) whether the language of the Ergonome–Gruber agreement was sufficient to meet the writing requirement of § 101(2); (2) if so, whether Ergonome and Gruber understood at the time the photographs were created that the works were made for hire; and (3) whether the Ergonome–Gruber agreement was signed by both parties or by their authorized agents. *See Dumas,* 53 F.3d at 559 (finding these three questions relevant to whether there existed a valid work-for-hire agreement).

The answers to these three questions counsel in favor of Ergonome's ownership of the photographs that Gruber took. In particular, the agreement between Stephanie Brown and Gruber reads:

This is to confirm that I [Stephanie Brown] have employed you [Gruber] today and on October 28, 1992 as a photographer to take photographs for publication in a book I am writing about how to avoid injuries from typing at comput-

er keyboards. In this capacity, the photos you have taken are "Works made for hire" under U.S. Copyright Law. I own the copyrights to them and all rights to use them for publication or other purposes, and the fees which have been paid to you-$450 for the October session and $850 for today-are your complete compensation for your services and all rights to use the photos.

The agreement is signed by both Stephanie Brown and Gruber. From the agreement's language, the Court finds that the writing satisfies the requirements of a valid work-for-hire agreement under § 101(2); that both parties understood that the work was in fact made for hire; and that both parties assented to the terms, as reflected in their signatures to the agreement. Moreover, contrary to Compaq's argument, the Court finds that the handwritten addendum at the bottom of the agreement (agreeing to pay Gruber a $1300 bonus if the book were to be published) does not indicate a lack of meeting of the minds. Indeed, the addendum is initialed by both parties. Viewing the document as a whole, it cannot be said that the document fails to indicate an agreement between Stephanie Brown and Gruber that the photographs were in fact made for hire.

■ Moreover, to the extent that the document between Ergonome and Gruber did not operate as a work-for-hire agreement, the Court agrees with Ergonome that it nonetheless suffices as an assignment of Gruber's rights in the photographs to Ergonome. Under 17 U.S.C. § 201(d); "[t]he ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and … [a]ny of the exclusive rights comprised in a copyright may be transferred …." 17 U.S.C. § 201(d). Of particular note, "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and

remedies accorded to the copyright owner by this title." *Id.*

■ Unlike the writing requirement for a work-for-hire agreement, the requirements for a transfer or assignment of copyright are neither controversial nor difficult. As Judge Kozinski of the Ninth Circuit has explained, the

> writing requirement [for an assignment] is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do.

*Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir.1990). Additionally, with respect to the timing of an assignment or transfer agreement, the Court notes that, as with a work-for-hire agreement, the Copyright Act does not specify a time period for the execution of the assignment document. The Eleventh Circuit has held, however, that "a copyright owner's later execution of a writing which confirms an earlier oral agreement validates transfer *ab initio.*" *Imperial Residential Design, Inc. v. The Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir.1995).

In the instant case, the Court finds that the written agreement between Ergonome and Gruber, dated June 15, 1993, suffices as a transfer of any copyrights Gruber may have had in the photographs. It clearly evinces the parties' intent for the copyrights in the photographs to be owned only by Stephanie Brown. It indicates a price term. It is signed by Gruber. Therefore, the quitclaim that Gruber sold to Compaq some four years later conveyed nothing, for Gruber's rights, if any, already belonged to Ergonome. The Court thus

rejects Compaq's quasi-motion for summary judgment on the matter.

Accordingly, the Court

**ORDERS** that Compaq's Opposition to Ergonome's Supplemental Motion for Partial Summary Judgment, treated *arguendo* as a motion for partial summary judgment, is **DENIED.**